ESSEX MINING COMPANY v. E. P. BULLARD.

*Audita Querela.    Fraudulent Judgment.    Attaching Creditors.
Costs.*

Subsequent attaching creditors cannot maintain *audita querela*, using the name of the judgment debtor against his consent, to vacate a judgment, execution and levy in favor of a prior attaching creditor, without showing a legal right to the property levied upon paramount to the right of such creditor, and also that in order to avail themselves of that right it is necessary that the proceedings under which the prior creditor acquired his title be vacated and set aside by *audita querela*.   And the suit failing, the defendant would be entitled to his costs.

Showing that the debtor was a non-resident and the prior attaching creditor obtained judgment without notice, by publication or otherwise, is not sufficient.

Neither can they maintain their right to prosecute such suit upon the ground that the equitable owner of a demand has the right, when necessary, to use the name of him

who has the legal interest. Nor upon the ground that they may enter and defend the suit of a prior attaching creditor. Nor because the judgment sought to be vacated was fraudulent as to creditors; for if fraudulent in that respect it is void as to them, and they may pursue the property in disregard of the prior attachment and levy, without resorting to *audita querela* or other proceeding to vacate the judgment and levy.

The fact of an agreement of the first attaching creditor, before he made his attachment, that the attachment on his writ and on those of the subsequent attaching creditors, should all stand on an equal footing, and the property attached should respond to their several debts *pro rata*, and that upon this understanding he was employed to procure the attachments to be made, and that he has taken the whole property upon his own debt and refused to divide *pro rata*, would not entitle the subsequent attaching creditors to use the name of the judgment debtor to prosecute *audita querela* to vacate the judgment and levy, for the above causes, viz., defect in service and fraudulent judgment.

There are many errors and mere technical irregularities in the proceedings under a prior attachment, which the defendant in such proceedings may waive, or may successfully interpose, at his election, but of which a subsequent attaching creditor cannot avail himself.

AUDITA QUERELA as per declaration. Plea, the general issue, and that the suit has been discharged by the plaintiff's attorney, T. P. Redfield. . Trial by the court, August term, 1869, Caledonia county, STEELE, J., presiding.

The said T. P. Redfield produced an exemplified copy of the record of a regular adjudication of bankruptcy against the plaintiff, and of the appointment of one Sedgwick as the plaintiff's assignee, and also offered in evidence the record of his appointment as attorney of the plaintiff corporation, and as attorney of the assignee in bankruptcy of said corporation, and asked to enter a nonsuit in this case, and filed a written motion to that effect. The defendant insisted that the plaintiff be allowed to enter a nonsuit, but L. P. Poland, the attorney of record for the plaintiff, resisted said motion. The question in the case was whether Poland represented parties who had a right to institute and control the suit. Upon the trial of this question by the court, the following facts appeared :

The Essex Mining Company owned lands in Essex county, Vermont, and no other property of any great amount. The said company owed the defendant, E. P. Bullard, and also owed one Batchelder and one Tilton. Bullard, Batchelder and Tilton were all stockholders in the company, and Bullard and Tilton were directors, and all agreed to sue the company, and Bullard was to bring the suits and attach the property of the company. Bullard

brought suits in favor of all three parties, and took judgment in them all by default. Batchelder and Tilton knew nothing of the character of the service. The property was attached first on Bullard's suits, and then on the others, subject to this attachment. Bullard took judgment for a large sum, took out execution and levied upon the whole of the company property, and exhausted it all in satisfying his execution. This suit of *audita querela* was then instituted in the name of said Essex Mining Company without their consent, by and for the benefit of Tilton and Batchelder, for the purpose of enabling them to vacate Bullard's judgment and levy.

The Essex Mining Company, which is substantially under the control of Bullard, have never adopted or approved this suit, but as a company have disapproved of it, and now attempt to discontinue it, and have taken proceedings to be adjudged bankrupt for the purpose of protecting Bullard's interest in the matter. Tilton and Batchelder, who have thus far controlled this suit, offered evidence tending to prove all the material facts alleged in the declaration, and also that Bullard agreed, before he made his attachment, that the attachment on his writ, and on Tilton's, and on Batchelder's, should all stand on equal footing, the property to respond to their several debts, *pro rata*, and that upon this understanding he was employed to procure said attachments to be made, and that in fact he has taken the whole upon his own debt, and refused to divide *pro rata*.

But the court held that Tilton and Batchelder did not stand in such a relation as to authorize them to institute and control this suit in the name of the Essex Mining Company, without the consent and against the will of said company.

The court accordingly rendered judgment that the plaintiff become nonsuit. The plaintiff in interest claimed that the nonsuit should be without cost, and the court was of opinion that the judgment should be without costs, provided the matter was within the discretion or control of the court, but allowed the defendant to recover costs, deciding that the disallowance of costs was not in the power of the court, to which the plaintiff excepted.

The plaintiff in the declaration alleges that on the 27th of October, 1866, the defendant, Bullard, commenced two suits against said company, returnable to the December term of Caledonia county court, 1866, with declarations in assumpsit ; that said writs were served by attaching certain real and personal estate belonging to said company in Concord, Vt. ; that said Essex Mining Company is a corporation chartered by the state of New York, and organized in that state, under the laws thereof, and was not within this state, and had no notice whatever of the commencement or pendency of said suits, and therefore did not appear to defend the same ; that at the December term, 1866, of said county court, the said Bullard caused judgment to be entered in said suits against said company by default, and had his damages assessed for the sum of $28,928.37, and the costs of both said suits taxed at the sum of $33.40, and by some process judgment was rendered in one of said suits for the full costs and damages assessed in both. The complaint also alleges that at the time of the service of said writs the complainant was without this state, and was not within the state at any time prior to said December term, 1866, and had not any notice of the pendency of said suits, and no evidence was shown to the court that the complainant had any notice of said suits, nor did the court find or adjudge that any such notice had been given ; that said Bullard, notwithstanding this, neglected to have said suits continued to the next term of said court, and have notice published as the statute provides, but took said judgment by default at said December term ; that said Bullard, without entering into any bond or recognizance to secure the complainant a writ of review as the statute requires, on the 7th of January, 1867, took out his writ of execution upon said judgment, and levied the same upon the said real estate of the complainant, and caused the same to be appraised and set off on said execution at the sum of $27,000. The complaint also alleges that the said Bullard's debt, for which he took said judgment, was fictitious and fraudulent, and that the notes described in his declaration were the result of a fraudulent and collusive conspiracy between said Bullard and one Curtis and one King, to injure and defraud the complainant or the honest and *bona fide* owners of stock in said company, by obtaining a fraudulent and fictitious judgment, and sweeping the entire property of said company upon the execution. The complaint also alleges that certain notes described in the declarations in said suits as payable to said Curtis, and others payable to said King, were never endorsed to said Bullard.

31

*L. P. Poland,* for Tilton and Batchelder.

The facts set forth in the complaint are sufficient to sustain it, and to set aside both the judgment and the execution issued thereon. *Marvin* v. *Wilkins,* 1 Aiken, 107 ; *Whitney* v. *Silver,* 22 Vt., 634 ; *Alexander* v. *Abbott,* 21 Vt., 476 ; *Eastman* v. *Waterman,* 26 Vt., 494 ; *Dingman* v. *Myers,* 13 Gray, 1.

Have Tilton and Batchelder the right to use the name of the Essex Mining Co., to institute and prosecute this suit to set aside this illegal and fraudulent judgment and execution ? They are not mere volunteers and interlopers having no interest in the matter ; they have subsequent attachments on the same property, which is the only means out of which they can ever get any payment of their debts. No principle is better settled than this, that the person equitably entitled may always use the name of one holding the legal interest to prosecute his right, even against the will of such nominal legal owner. The practice of allowing a subsequent attaching creditor to come in and defend the first suit stands on the same principle. In this state we have regulated that by statute, but our statute confers no new authority upon the courts. In New Hampshire, and several other states, the courts have given equal privileges to subsequent attaching creditors without the aid of any statute whatever. *Dunbar* v. *Starkie,* 19 N. H., 160 ; *Buckman* v. *Buckman,* 4 do., 319 ; *Blaisdell et al.* v. *Ladd et al.,* 14 do., 129 ; *Boscawen* v. *Canterbury,* 23 do., 191.

But if the court should be of opinion that merely as subsequent attaching creditors they could not use the name of the Essex Mining Co. to prosecute this suit, we claim that upon the facts appearing in this case they have the right. The old books all speak of a writ of *audita querela* as substantially the same as a bill in equity. In this case, a direct fraud was practised by Bullard on Tilton and Batchelder. As against him we have the right to use the debtor's name to correct and overturn this fraud.

Tilton was a director of the company, and had the right to use the company's name for an honest purpose, even against Bullard and his co-conspirators.

The decree in bankruptcy was a mere sham. The defendant's own evidence shows the discharge pleaded to have been unauthor-

ized and fraudulent ; all right had before passed to the assignee. It was without consideration and really done by Bullard himself. The proper course was to move to strike off the files of the court. *Webb* v. *Steele et al.*, 13 N. H., 230, and cases cited.

But if the county court correctly held that Bullard had the right to come in and take the case out of our hands and control the suit himself, it was clearly within the power of the court to say that he should not submit to a judgment of non-suit, and then hold our recognizance for costs to put in his own pocket.

*Timo. P. Redfield*, for the plaintiff.

If the defendant's judgment is *void*, then Tilton does not need the proceeding to set it aside. If it is merely *voidable* at the election of this plaintiff, then it is the plaintiff and not another that makes the *election*. There is no *privity* between Bullard and the other creditors of the plaintiff; the rights of each are the rights of several *creditors* of a common debtor.

The *subsequent attaching creditor* would have no right to defend the suit in which the first attachment was had, except by force of our statute, and it has been often held that the right is confined to an inquiry into the justice and extent of the claim, but gives no right to interpose dilatory or technical pleas. But Tilton and Batchelder do not stand as " *subsequent attaching creditors.*" ·

*J. Ross*, for the defendant.

Tilton and Batchelder not being parties, defendants, to the original suits, cannot make use of this writ to set aside the defendant's judgment and levy of execution. At common law *audita querela* was used only to relieve *the party* on the ground of some matter happening after the judgment and which he had no opportunity to plead. *Turner* v. *Davis*, 2 Saund. R., 148, n (1) ; *Scott* v. *Larkin*, 13 Vt., 112. The defect in the service of the writs *defendant* v. *plaintiffs*, of which Tilton and Batchelder seek to take advantage in this suit, at common law would be remedied by writ of error and not by *audita querela.* 1 Swift Digest, 790. But *audita querela* or writ of error is not a weapon which every man can take up and wield at his pleasure. They are given only to

the party aggrieved, by the irregular proceeding in the original actions, to the defendants in those actions. *Turner* v. *Davis*, 2 Saund., *supra*; *Blackstone* v. *Martyn*, Sir W. Jones, 90, cited in the above note, p. 148; *Shirley* v. *Lunenburgh*, 11 Mass., 379; Hammond on Parties to Action, 267.

A defect in the service of the writ can always be waived by the party. His appearance by self or attorney waives all such defects. *Bennett et al.* v. *Stickney*, 17 Vt., 531; *Perry* v. *Whipple*, 38 Vt., 284; *Knox* v. *Sumners*, 1 Curtis' Decis., U. S. Sup. Ct., 649; *Pollard* v. *Dwight*, 2 do., 158; *Taylor* v. *Longworth*, 13 do., 414.

If the party can waive defects in the service of the writ, before judgment, by acts not at the time intended by him to have that effect, he certainly can waive such defects after judgment, intentionally and voluntarily. This has been effectually done by the plaintiffs in this case, whether the power to do so is still vested in the plaintiffs or their assignee.

The opinion of the court was delivered by

Peck, J. Tilton and Batchelder commenced and were prosecuting this suit without any authority from the plaintiff, the Essex Mining Company. The county court decided that Tilton and Batchelder did not stand in such relation as to authorize them to institute and control the suit in the name of the Essex Mining Company without the consent and against the will of the company; and on motion of the Essex Mining Company, allowed a non-suit to be entered with costs. To this decision Tilton and Batchelder, claiming the right to prosecute this *audita querela* in the name of the Essex Mining Company, except. The correctness of this decision, as to which has the right to control the suit on the side of the plaintiff, is the only question involved in the case before us; the merits of the *audita querela*, or sufficiency of the causes alleged in the declaration, not being material to be considered, any farther than they incidentally may have a bearing on the question of right to control the suit. There is nothing in the declaration connecting Tilton and Batchelder with the subject matter of the *audita querela*, or showing any right in them to

prosecute it, or use the name of the Essex Mining Company for that purpose. This, however, is not material if the extrinsic evidence is sufficient to establish the right. It appears that the Essex Mining Company, a New York corporation, chartered and organized there, owned lands in Essex county, Vt., and owned no other property to much amount; that the company was indebted to Bullard, (the defendant in the *audita querela*,) and also was indebted to Tilton and also to Batchelder ; that all were stockholders in the company, Bullard and Tilton being directors, and all agreed to sue the company, and Bullard was to bring the suits and attach the property of the company. Bullard brought suits in favor of all these parties and took judgments in them all by default; Batchelder and Tilton not knowing of the character of the service. The property was attached first in Bullard's suit, and then in the others subject to Bullard's attachment. Bullard took judgment for a large sum, took out execution and levied upon the whole of the company property and exhausted it all in satisfying his execution. Tilton and Batchelder brought this suit for their benefit, as already stated.

The parties to the judgment, execution and levy, sought to be vacated by the *audita querela*, have a right to have the same remain in force undisturbed, at least unless Tilton and Batchelder show a legal right to the property levied upon paramount to the right of Bullard, and also that in order to enable them to avail themselves of that right, it is necessary that the proceedings under which Bullard acquired his title be vacated and set aside by *audita querela*. It is claimed that the fact that Tilton and Batchelder are subsequent attaching creditors as to the property levied on by Bullard, and have no other means of collecting their judgments, gives them the right to use the name of the Essex Mining Company in prosecuting the *audita querela*, and thereby to avail themselves of the alleged defect in Bullard's judgment; that is, the want of a continuance and notice according to the provisions of the statute when defendant resides out of the state, and is not served personally with the writ. There are many errors and technical irregularities in the proceedings under a prior attachment, which the defendant in such proceedings may waive, or may

successfully interpose at his election, but of which a subsequent attaching creditor can not avail himself; his right to object being limited to what is more substantial. If any such radical defect, or substantial ground of objection, exists in the proceedings under the prior attachment as legally ought to entitle the subsequent attaching creditor to priority of right, in respect to the property attached, the latter may avail himself of that right by levying upon and pursuing the property in disregard of the prior attachment or levy, without resorting to an *audita querela* or other proceeding to vacate the judgment or levy of the prior attaching creditor, he not being a party to that judgment. This is the more reasonable practise, as it interferes with the rights of the first attaching creditor as to so much of the property only as is required to satisfy the subsequent attaching creditor's debt, while an *audita querela*, if it prevail, vacates the judgment or levy as to the whole, when perhaps a small portion of it only is requisite to satisfy the subsequent attachment having the priority of right. For aught that appears such is the fact in this case. If the alleged irregularity in Bullard's judgment is such as to entitle Tilton and Batchelder in any form to priority of lien upon the property, they can avail themselves of that right without the aid of *audita querela;* and if it is not of such a character, then clearly they have no right to such writ. The counsel of Tilton and Batchelder attempt to maintain their right to prosecute the suit, upon the ground that the equitable owner of a demand has the right to use the name of him who has the legal interest, when necessary to enforce it. But the parties claiming such right here are in no sense the owners of the judgment and levy they seek to vacate, nor is there any necessity of any such proceeding in order to enable them to avail themselves of all their rights to the property attached, if they have or ought to have any such right; while the prosecution of the suit may be detrimental to the parties to that judgment without being necessary to perfect any just or legal rights of the persons prosecuting this action. The statute provides that, " whenever a subsequent attaching creditor of real or personal property shall wish to contest the validity of the debt or claim on which a previous attachment is founded, the court before whom the process

shall be returnable on which such previous attachment shall have been made, may in their discretion permit such subsequent attaching creditor to appear by himself or counsel and defend said suit." It is insisted that from analogy to this right, which it is claimed would exist without the statute, a subsequent attaching creditor may prosecute such *audita querela*. This right seems to be limited by the statute to the right " *to contest the validity of the debt or claim on which a previous attachment is founded;*" but there is an allegation in this *audita querela* that Bullard's debt for which he took judgment was fictitious and fraudulent. The right to appear at the trial for the purpose specified in the statute may be serviceable to the subsequent attaching creditor if he avails himself of it. It will enable him to learn on what demands the judgment is rendered, and by what evidence they are supported; thereby furnishing him some means of judging whether they are real or fictitious. It may also be easier for him thus to prevent the recovery of a fraudulent judgment, than afterwards to prove it fraudulent without knowing what transpired at the trial. But this right thus to appear and defend furnishes no reason why the right should be extended to trying the question in this manner by *audita querela*. After the judgment has been rendered, the question as to its fraudulent character can as well be tried in an action of ejectment for the property attached and levied on, as in an *audita querela*. There is no necessity for an *audita querela* to set the judgment aside, for if fraudulent as to creditors, it is as to them absolutely void, and must be so held in such action of ejectment, although valid as between the parties to it.

But it is insisted that the further fact which Tilton and Batchelder offered to show,—that is, that Bullard agreed, before he made his attachment, that the attachment on his writ, and on Tilton's and on Batchelder's, should all stand on an equal footing, the property to respond to their several debts *pro rata*, and that upon this understanding he was employed to procure said attachments to be made, and that in fact he has taken the whole upon his own debt and refused to divide *pro rata*,—entitles them in the name of the Essex Mining Company to maintain this *audita*

*querela* for the causes alleged in the declaration. This agreement is not alluded to in the declaration, and it is conceded that this agreement, with the breach of it, is not a ground for the *audita querela;* but it is urged that it is a good reason for allowing Tilton and Batchelder to use the Essex Mining Company's name to prosecute the suit for the causes which are set forth in the declaration. No such effect can be given to such agreement and breach. Had Tilton and Batchelder appeared as subsequent attaching creditors to defend Bullard's suit, proof of this agreement, and that Bullard had put his attachment on first and made theirs subject to his, would have constituted no defence. It was a matter collateral to, and could have no effect upon, his right to a judgment. By the agreement among themselves all were to sue and recover judgments. The agreement that all should share *pro rata* was not an agreement to which the Essex Mining Company was a party, and hence a breach of it could not affect Bullard's right to a judgment against the Essex Mining Company in his suit. Nor can that, with the further fact that Bullard levied his execution on the whole property, be a reason for permitting Tilton and Batchelder to vacate his judgment. The agreement to share *pro rata* did not impair the right of Bullard to recover judgment, but related to the use to be made of it in collecting it out of the property of the Essex Mining Company, as between the three creditors. The judgment cannot be set aside because the judgment creditor has levied on more than his share under the agreement. And to set aside the judgment or the levy for that cause, would not be carrying out the agreement, but be to exclude Bullard entirely, and to place Bullard in a worse condition probably than Tilton and Batchelder claim Bullard has attempted to place them. It is evident that the rights of the three creditors of the Essex Mining Company, as between themselves, cannot be settled in this *audita querela.* It is not adapted to that end, nor can it advance a step in that direction. Whether Tilton and Batchelder have a legal remedy against Bullard for damages for violation of the co. .... , or whether they can compel him in equity to stand as their trustee, and by conveyance put them in the

same condition as to the title in which they would have stood had he performed his agreement, we need not decide ; but it is quite clear the ruling of the county court was correct. We see no reason why Bullard is not legally entitled to recover his cost.

Judgment affirmed.