CHARLOTTE W. STRATTON AND ANOTHER v. HOMER A. LYONS.*

*Trespass.   Justice's Record Conclusive.   Cannot be Contradicted by Parol Evidence.   Stockholder.   Declaration. Estoppel.*

1. A justice's record is as conclusive as that of any other court, between the parties or third parties; hence, when it showed legal service of a writ on a company by being served on a stockholder, parol evidence is inadmissible to prove that he was not such stockholder.†

2. When a company is brought into court, and its records, as the articles of association, annual reports, &c., recorded in the town clerk's office, as required by statute, show a person to have been a stockholder, such company is estopped from introducing any evidence to prove the contrary.

* See *post*, a case between the same parties as to this clay-bed.

† When the court has jurisdiction, that the judgment is conclusive between the parties and their privies, not only as to all questions *decided*, but as to all questions that *might have been raised and decided on trial*, see *Peck* v. *Jenness*, 7 How. 624; *Cromwell* v. *County of Sac*, 94 U. S. 352; *Stout* v. *Walsh*, Sup. Ct. U. S., Oct. Term, 1880. Cen. L. J., June 24, 1881, p. 586.—REP.

3. In an action of trespass on the freehold, evidence is not admissible to prove that the plaintiff had to go farther to get to his wood-lot by reason of the trespass, when it is not alleged specially in the declaration.

ACTION of trespass on the freehold. Writ dated Nov. 22, 1876. Plea, the general issue. Trial by jury, December Term, 1879. VEAZEY, J., presiding.

The plaintiffs' evidence showed that they were daughters of Elhanan W. Stratton, and that he owned in fee at the time of his death, and for more than twenty years previous, the close described in the declaration ; and they claimed title thereto under his will, executed January 26, and probated March 16, 1863, and also under a deed from G. B. and Milo Stratton, dated April 10, 1871, conveying reversionary interests under said will ; that they had lived in the dwelling-house on said close since their father's death in 1863 ; and had possessed and occupied the close as a farm, and that part thereof where a clay-bed is situated, by pasturing cattle, it being a part of the pasture belonging to said farm, and used as a pasture is ordinarily used with a farm, and having a roadway running through this part where the clay-bed now is, which runs from near the house to the wood-lot on said farm, and was used in the ordinary way of a wood road in going back and forth and across the farm, for ordinary farm purposes, to draw wood, &c. ; that their father for more than twenty years prior to his death occupied the close as a farm and lived thereon ; that the defendant at various times since December 1, 1874, had entered upon said close, with men and teams, and had dug a large hole or pit near the centre of the close, uncovering and laying aside the earth and removing clay ; and that this pit so obstructed said private road of the plaintiffs, that they and others under them, traveling the same, had to turn out of the usual track for a distance of several rods, with considerable inconvenience.

The defendant seasonably objected to the evidence of the plaintiffs as to any damage done to the said private road as a road, for the reason that no such damages were laid in the declaration ; and to the admission of the same the defendant excepted.

The defendant introduced in evidence the following deeds, constituting his claim of title :

1.  A deed from said Elhanan W. Stratton to Jason H. Archer and four others, dated June 16, 1855, conveying the " clay-bed, so called, situated on my land, easterly of the house where I live, near the brook, with the rights of digging and carrying away the same from any part of the farm owned by me, and with a right of way to and from the clay, in prosecuting the business of digging and moving said clay."

2.  A deed from said Archer and said four others to the United States Pottery Company, a corporation established under " An act providing for the organization of private corporations," approved Dec. 5th, 1853, conveying all the joint real estate of said grantors, and dated June 30th, 1855.

3.  A deed purporting to be made by the United States Pottery Company to George W. Harman, dated January 9, 1874, conveying the same lands and easements described in said E. W. Stratton's aforesaid deed.

4.  A deed from said George W. Harman to the defendant, Lyons, of the same lands and easements, dated January 12th, 1874.

The defendant also introduced the following documents :

5.  The original records of the United States Pottery Company, from the year 1855 to and including August 9th, 1859.

6.  A certified copy of the articles of association of said company from the town clerk's office.

7, 8, 9.  Like copies of the annual reports of said company for 1856, 1857 and 1858.

10.  A certified copy of the record of a judgment rendered May 14th, 1862, before John V. Hall, a justice of the peace, in favor of George W. Harman, against the said United States Pottery Company.

11, 12.  The original first and alias executions issued upon said judgment, and returns thereon.

13.  The original records of said United States Pottery Company, from June 10th, 1862, to January 8th, 1874.

14.  Docket minutes, records and files of the County Court and Court of Chancery in the cases of *Stark Bank* v. *U. S. Pottery Co.; W. H. Farrar* v. the same; and *U. S. Pottery Co.* v. *W. H. Farrar.*

The defendant claimed that this documentary evidence tended to show among other things, that Sidney B. McEowen was one of the original subscribers for the stock of the U. S. Pottery Co. to the amount of one share ; that he became a stockholder, entitled to a certificate therefor ; that he signed the call for, and attended the first meeting of the corporation, and the first meeting of its directors ; was elected a director in 1855, 1856, 1857 and 1858, but not in 1859 ; and that the stock of said corporation was paid in with said McEowen's consent, in the way stated in the record.

The defendant's parol evidence tended to prove that said corporation failed in May, 1858; that nearly all its property was attached on several writs; that some of them were entered in court and the causes not all ended until 1865; that in one such cause there was a trial at the December Term, 1861, at which the treasurer of said company was present, and a hearing in the Supreme Court at February Term, 1862, followed by a reversal and remanding, and that said cause remained in court until 1865; that a majority of the stock was owned in other States; and that in March, 1862, when said Harman's writ was served, every person, who had ever been a stockholder, director or principal officer of said company, was out of the State of Vermont, excepting only said Sidney P. McEowen; that after said levy and sale of said capital stock, said George W. Harman, then claiming to own the same, entered an appearance for said corporation in said Farrar suits, and prosecuted the same to a successful termination, in favor of said company in 1865. Said Harman was during this time the cashier and attorney of the Stark Bank, which was a subsequent attaching creditor of the U. S. Pottery Company.

The plaintiffs, in rebutting, called said McEowen, who testified, in substance, among other things, that he never owned any stock of said Pottery Company, and never acted as director, but heard he was elected a director, but did not recollect of attending but one meeting, and went to that, to decline being a director.

Plaintiffs' evidence tended to show, that said U. S. Pottery Company failed in about 1858, and that thereafterwards for more than fifteen years neither said company, nor any one under it, worked said clay-bed, although others worked it somewhat during some portion of this time.

The plaintiff also introduced in evidence the original writ, specification and return in the justice cause of *Harman* v. *U. S. Pottery Co.*, for the purpose of showing an interlineation in the officer's return, claiming it was interlined fraudulently after the writ was returned, but did not introduce said writ until after the defendant had introduced certified copies thereof; and the plaintiffs' counsel commented at length, to the jury upon said writ and specification. This evidence was offered under a claim of plaintiffs'

counsel, that the whole proceeding in said last-mentioned suit was fraudulent and void, and that they should prove it to be so.

The foregoing was all the evidence offered by the plaintiff to impeach said justice's judgment; but the plaintiff claimed that said interlineation unexplained, and the circumstances under which said judgment was obtained, as explained in evidence, tended to show such fraud.

The defendant seasonably objected to all said evidence so offered for the purpose of attacking the conclusiveness of said corporate, and judgment records; and to the *pro forma* admission of the same excepted.   After the evidence was closed, the court informed counsel that as the evidence had turned out, the only question the court should submit to the jury, except the question of damages, was whether Mr. McEowen was a *bona fide* stockholder of the U. S. Pottery Company, when the writ of Mr. Harman against the company was served upon him, and counsel upon both sides conceded that that question was the only one to be submitted.   Numerous requests to charge were made by counsel on both sides.   The defendant, among other things, requested the court to charge and rule as follows :   That the defendant has shown a clear and perfect title of record to the clay bed, so called, as conveyed by said Elhanan to said Archer and others, and is the owner of the same as in said deed described ; that the defendant is not liable in this action for any special injury done to the road as a road, whether by driving over it, digging in it, or otherwise ; that the plaintiffs are bound by every thing and every act which would bind the United States Pottery Company ; and cannot complain of any act of the defendant of which the U. S. Pottery Company could not complain ; that a *bona fide* stockholder is one who owns his stock in good faith, or without fraud, and he may acquire his title to the stock by purchase or gift, and it is not important that he pays the full value, nor any value, for the stock ; that if Mr. McEowen himself subscribed for stock, or if stock was subscribed for him or in his name by another, and if when this came to his knowledge he assented thereto by allowing his name to be used as a director, or by attending meetings of the directors or stockholders, he would be a *bona fide* stockholder, unless his holding of

such stock were fraudulent, or with the design to injure the general public ; that it is for the plaintiff to show that Mr. McEowen was not a *bona fide* stockholder, and their case must fail unless they show it.   The court declined to comply with the foregoing requests, further than is hereafter stated ;   and after explaining the nature of the *action and the respective claims*, said :

The plaintiffs own this farm.   Before they owned it their father, while he owned it, sold and conveyed away the right to Mr. Archer and others to go upon this farm, and dig and remove the clay from any part of it.   That right is still outstanding upon this farm, or against it, in favor of somebody.   The defendant says that he owns that right,—that he has got that title ; and the plaintiffs say that he has not got it.   Now if the defendant has got that title,—that right that was sold by the father of these plaintiffs to Mr. Archer and others—then he is not a trespasser in going on, and digging and removing the clay.    If he has not got that right then he was a trespasser in what he did there.   The plaintiffs own this farm subject only to that right, and nobody else has any right to go on there and dig and remove that clay, on account of that right being outstanding upon the farm, unless they have got that particular right—that is, own it.    Their right is just as good against everbody else, as though there was no such outstanding right upon it.

.   .   .   .   .   .   .   .   .   .   .

The entire question of the defendant's right there is narrowed down to this single proposition, that is, whether Mr. McEowen was a *bona fide* stockholder of that corporate company when the writ of Mr. Harman against the company was served upon him.

.   .   .   .   .   .   .   .   .   .   .

And after alluding to the evidence bearing on this question, the court said :

Now there is nothing mysterious, gentlemen, as to what constitutes a *bona fide* stockholder.   A real, actual owner of stock is a *bona fide* stockholder, whether he got it by gift, or by purchase, or whether he paid for it or not.   If he is the real actual owner of the stock, he is in the legal sense of the term a *bona fide* stockholder.    But when stock is set to a man on the books of a company or corporation solely for the purpose of making it appear that he was eligible to the office of director, and with the understanding that the ownership should remain in somebody else all the time, and that the man to whom it was set should not be the owner, the thing being done as a mere matter of form to cre-

ate the appearance of ownership, when it was not to be an owner-
ship in fact,—when stock is set to a man in this way and for this
purpose,—he would not become a *bona fide* stockholder thereby.
If McEowen never bought or subscribed for, or authorized any
subscription for any stock, or received the gift of any stock, and
never knew or understood that he had any, he was not a *bona fide*
stockholder.   But if he bought the share of the stock that was
set to his name, or received it and accepted it as the real owner,
whether he paid for it or not, he was a *bona fide* stockholder.
Nothing has appeared in this case as far as I remember to show
that they had any certificates of stock in that company, and it was
not necessary that he should have a certificate to constitute him
owner of stock.   If he subscribed for the stock, or authorized
anybody else to subscribe for it, or if he knew that the stock was
set to him as his stock in fact, for the purpose of making him
eligible to the office of director, and he accepted the office of
director with the understanding that he had so been made a stock-
holder for this purpose, and understood that he had thereby be-
come the owner of a share of stock, either as a gift or under a
liability to pay for it, and he accepted the office or acted as director
in this view, he would thereby become a *bona fide* stockholder.
There is no evidence tending to show any fraudulent purpose in
making Mr. McEowen a director, or that he or any of the direct-
ors or stockholders, while an officer of the company, were actua-
ted by bad faith, or had any fraudulent purpose in view in making
him a director or stockholder; and the counsel for the plaintiffs
make no claim of that kind.   The company itself, or any stock-
holder, had a right to give Mr. McEowen a share of stock in order
to make him eligible as a director, and if he was made a stockholder
by giving him a share for this purpose, and he had notice of it
and understood it, and accepted the office, or acted as a director,
understanding that he had been so made eligible to hold the office,
then there was such an acceptance of the stock, as made him a
*bone fide* stockholder, there being no claim of fraud in fact or in-
tended in the transaction.   But if he did not know what was done
about making him a stockholder, or accept the office or act as
director, then the attempt to give him a share, and to make him
a stockholder by setting it to his name upon the records would not
make him a stockholder in fact.   The fact that Mr. McEowen went
to one meeting of the company and declined to receive the office
of director, or to act or be elected as a director is not of itself
alone such an act as would make him *bona fide* stockholder.

   Mr. McEowen has told you what corporation and directors'
meetings he attended so far as he recollects.   Defendant's counsel

argue that he is advanced in years, and this matter took place a good many years ago, and his interest in the company was so small that he has forgotten about it. The other side argue the other way. Now you are to look the evidence all over, bearing on this point, and say how it is, for it decides the question whether he was a *bona fide* stockholder at the time named or not.

The court then explained to the jury the rule as to the burden of proof, in a manner satisfactory to both parties; and then said, in view of the general title to these premises, and the possession being shown to be in the plaintiffs, among other things as follows: "The defendant undertakes to defend on the ground of title. Now the burden is upon him to make out by a fair balance of proof that he has that title, as explained to you." It is admitted by the counsel for the plaintiffs in argument that these records as they stand create a presumption that Mr. McEowen was a stockholder; but they undertake to attack that record in the way they have argued to you, and they produce Mr. McEowen in support of their view of it. Now it is for you to say whether they have overcome what they admit creates a presumption upon this point. Now, if you find that Mr. McEowen was a *bona fide* stockholder, at the time that the writ of Mr. Harman was served upon him, then your verdict should be for the defendant; because when you find that fact, the defendant has established a clear title right down through, of his rights to go on there, and dig clay and remove it from that farm. He has made out his title; made out his defense. If you find that fact, therefore, your verdict should be for him. In respect to damages, the court, after explaining the period within which the injuries complained of were claimed, said the plaintiffs are entitled to recover for just such damages, just such injury as you find the acts of the defendants, within this period of time, directly caused to these premises. And after expressly excluding any right to recover for the value of the clay removed, and for various other things referred to, in the progress of the trial satisfactory to the defendant; and after calling attention to the evidence, and claim in respect to said wood road, the court said "the plaintiffs if found to be entitled to recover at all, are entitled to recover in this action for the injury that was caused to these premises by the digging, and removing of the clay and soil by the defendant, between the dates I have given to you, but not for the digging and removal done prior to that by anybody, or the digging done subsequent by the defendant; but the digging and removal between these dates, and by the going back and forth over the plaintiffs' premises to do this, and to draw off the clay, keeping in mind the interference with the road, so far as you find it was in-

terfered with, by this digging and removal ; remembering what the road was used for, and how it was used by the plaintiffs ; regarding also the quality of the soil, and the location of the pit dug in the pasture ; and bearing in mind all the evidence, as to the character and extent of the injury. You should make the plaintiff good in damages for the injury directly resulting to the plaintiffs from the acts complained of, keeping in mind all the circumstances alluded to by me, and bearing thereon.

In other respects the charge was satisfactory to the defendant.

To the refusal of the court to charge as requested, so far as the court did as above refuse, and to the parts of the charge above detailed, the defendant excepted. The jury returned a verdict for the plaintiffs, for one dollar damages. Exceptions allowed, execution stayed, and cause passed to the Supreme Court.

*A. P. Lyman, C. N. Davenport* and *J. K. Batchelder,* for the plaintiff.

The plaintiffs claim that the judgment in favor of G. W. Harman was void for the reason that there was no legal service of the writ on the company. The only service was by leaving a copy with McEowen as a stockholder and director. By the records of the company McEowen appears to have been a stockholder. Although the officer's return recites that he was a stockholder, and the records of the company show it, still these are not conclusive ; but only *prima facie,* and may be contradicted by oral testimony. It is true an officer's return is evidence between the parties; but it is not conclusive as to third parties. *Barrett* v. *Copeland,* 18 Vt. 67 ; *Witherell* v. *Goss et al.,* 26 Vt. 748 ; *Gifford* v. *Wodgate,* 11 East. 296 ; *Boardman* v. *Goldsmith,* 48 Vt. 403. It is not proposed to contradict an allegation in the return of what the officer *did ;* but only his *opinion* of whether McEowen was a stockholder. So the records of the company are *prima facie* evidence of the fact that he was a stockholder ; but they are not conclusive. Starkie Ev. 411 ; *Campbell* v. *McCann,* 41 Ill. 45 ; *Boswell* v. *Dickerman,* 4 McLean, 262 ; 1 H. Black. 214 & n.; 3 S. & R. 29 ; 1 Rawle, 152 ; *Jackson* v. *Walsh,* 3 Johns. 226 ; 17 Mass. 432 ; 5 Wallace, 795. Defendant must show that he has the title of the company. 38 Vt. 284 ; 19 Ib. 80. No interest passed unless all the proceed-

ings were regular, and the law complied with. *Nason* v. *Blaisdell*, 12 Vt. 165 ; *Atkinson* v. *Allen*, 12 Vt. 619 ; 29 Vt. 398 ; 2 Am. Lead Cas. 809 ; *Collingsworth* v. *Barber*, 4 Peters 446 ; 17 Vt. 73. As to his being a *bona fide* stockholder, see *Carpenter* v. *Dodge*, 20 Vt. 595 ; 2 B. & A. 551 ; *Pearson* v. *Pearson*, 7 Johns. 26. The charge as to damage to the private road was correct. *Keenan* v. *Cavanough*, 44 Vt. 268 ; Chit. Plead. 348 ; 1 Sedg. Dam. 1, 149 ; 13 Vt. 386 ; 36 Vt. 592 ; 42 Vt. 667.

*Tarrant Sibley*, (and *Gardner & Harman*, of counsel), for defendant.

This case raises the question how far, in a collateral matter, parol evidence can be allowed to impeach the record of the judgment of a domestic court, of conceded jurisdiction over the subject matter. The question left to the jury was whether McEowen was a *bona fide* stockholder. It seems to have been conceded, for the purposes of the trial, that if he were such a stockholder the justice's judgment was based on a sufficient service. The officer's return, which is incorporated as a part of the judgment record, by a reference to it, states that McEowen was a director and a stockholder both. The record states further that the corporation had been attached to answer, etc., and not appearing, was defaulted. No valid and perfect " attachment to answer " can be made without the leaving of a copy of the writ with some person or in some place authorized by law. *Skinner* v. *McDaniel*, 4 Vt. 418 ; *Washburn* v. *Mining Co.*, 41 Vt. 50. Hence, this express statement of the record, apart from all legal intendments and from all reference to the writ, involves the necessary meaning that the copy of the writ had been lawfully and properly delivered. *Coit* v. *Haven*, 30 Conn. 192, 198 ; *Hahn* v. *Kelley*, 34 Cal. 391, (402); *Quivey* v. *Porter*, 37 Cal.. 458 ; *Quivey* v. *Baker*, 37 Cal. 465 ; *McCauley* v. *Fulton*, 44 Cal. 355. It has repeatedly been held in this State that the records of justices of the peace are entitled to the same degree of credit and legal verity as those of courts of more extensive jurisdiction, and cannot be impeached or counteracted by proof of their falsity. *Wright* v. *Hazen*, 24 Vt. 143 ; *Farr* v. *Ladd*, 37 Vt. (158). They are evidently superior courts,

and of general jurisdiction in the sense of those words as used by courts and text writers; and nothing shall be intended to be out of the jurisdiction of such a court but that which expressly appears to be so. *Peacock* v. *Bell*, 1 Saund. 73 ; *Gorset* v. *Howard*, 10 Q. B. 453 ; *Hart* v. *Seixas*, 21 Wend. 46, 53 ; Freeman Judg. 87. It is said to be a settled principle that a stranger cannot set up defects of title in one claiming under another source in confirmation of his own claim. Wells, " Res adjudicata " s. 170, p. 142. When a total want of service appears by legal evidence, the judgment of course is void. When there is merely a defective service, giving actual, though not technically perfect notice, the judgment will be valid ; and though it might be set aside in a direct proceeding, cannot be collaterally impeached. And this is true as well when the judgment is taken by default as otherwise. *Hammond* v. *Wilder*, 25 Vt. 342. And it was not necessary for the return to show affirmatively that none other of the principal officers were within the State, in order to lay a foundation for the service on a mere stockholder. *Stevens* v. *Fisher*, 30 Vt. 200 (203) ; *Walrace* v. *Turnpike Co.*, 2 Coldwell, (Tenn.) p. 517, 518, 519. We have seen how the U. S. Pottery Co. would be concluded by the recitals in the judgment record. How would it be affected by the statements in its own corporate records ? *Gould* v. *Norfolk Lead Co.*, 9 Cush. (345), 576. The conclusion seems irresistible, by whatever principles reached, that the plaintiffs can only stand on the rights of the Pottery Co. ; that the company would be bound by its official records ; and that parol evidence was not admissible to contradict them. *Cheever* v. *Meyer*, 52 Vt. (73).

The opinion of the court was delivered by

Ross, J. The plaintiffs claim no title to the clay-bed, the digging and carrying away of which furnished the occasion for entering upon the close complained of. They admit that that title is outstanding. If the defendant has it he was justified in what he did. The plaintiffs' grantor conveyed it to Archer and others, and the latter to the United States Pottery Company. So far, no question is made. Nor is any question made but that the defendant

has succeeded to all the rights in that respect which George W. Harman acquired by his suit against, and sale of, the stock of that company. The only question made is in regard to the regularity and conclusiveness of the proceedings in the suit of Harman against the company. When the suit was brought, the officers of the company and all its stockholders except Sidney P. McEowen, resided and were without the State. The defendant introduced the records of the justice rendering the judgment in that case, showing on their face regular service of the writ on McEowen as such stockholder; and legal proceedings thereafter resulting in a judgment against the company; and a sale of all its stock to Harman on an execution, regularly issued on said judgment. If this record is to stand unaffected by oral testimony, it is conclusive of the right of the defendant to enter upon the premises as he did, and dig and carry away the clay. If the defendant had no such right, then the plaintiffs as general owners of the premises would have the right to maintain this action against him, a stranger to the title to the clay, although that title was not in the plaintiffs. Their right to be undisturbed in the possession and use of the premises, was good against all the world except those who had acquired the right, granted by Elhanan W. Stratton to Archer and others, to enter for the purpose of digging and removing the clay. But making no question in regard to that right having passed into the United States Pottery Company, if the defendant can show that he has succeeded to the right of that company, as against the company, to dig and remove the clay, he has that right against the plaintiffs. In other words, the plaintiffs could not be allowed to show anything to defeat the conclusiveness of the record in the Harman suit which the company itself could not show, unless it should appear that the judgment in that suit was procured in fraud of the plaintiffs' rights. There are cases which hold that a stranger to the judgment record may attack and defeat its operation when brought in question collaterally in ulterior proceedings by showing that it was fraudulently procured as to him and his rights. But no such claim is made in this case, nor was there, so far as the exceptions show, any evidence to found such a claim upon. The broadest ground then upon which the

plaintiffs can stand relative to attacking the conclusiveness of the record of the justice in the Harman suit, is, that they can make the same attack thereon, and show anything to defeat its conclusiveness, which the company could show. Frequently a stranger to the judgment record is confined to narrower limits in attacking the conclusiveness of such record than a party thereto would be. A party may waive defects in the service or proceedings which render such a judgment voidable only, although in proper proceedings he might avail himself of the same to have the judgment vacated. But parties, interested in, and affected indirectly by, the results of such judgment, would have no right to take advantage of such defects as rendered the proceedings voidable only by a party thereto, and which he might waive. *Essex Mining Co.* v. *Bullard,* 43 Vt. 238. Hence if we accord the plaintiffs the same right to attack the conclusiveness of the record of the justice in the Harman suit that the U. S. Pottery Company would have, we place them in as favorable position in that regard as they can claim. "The records of justices of the peace," (it is said in *Farr* v. *Ladd et al.,* 37 Vt. 156,) "are entitled to the same degree of credit and legal verity as those of courts of more extensive jurisdiction, and cannot be impeached or counteracted by proof of their falsity." It is also there said : "When evidence offered contradicts the record itself, it cannot be received, although the effect of the evidence would be, if admitted, to show that the court had no legal jurisdiction over the party. The record is equally conclusive as to such facts as any other, when it appears of record." The cases of *Spaulding* v. *Chamberlin,* 12 Vt. 538; *Beech* v. *Rich,* 13 Vt. 595 ; *Shedd et al.* v. *Bank of Brattleboro,* 32 Vt. 709 ; *Eastman & Paige* v. *Waterman,* 26 Vt. 494 ; *Barnard* v. *Flanders,* 12 Vt. 657, are there cited and commented on, as holding the same doctrine. See also *Wright* v. *Hazen,* 24 Vt. 143. On the record of the justice in the suit *Harman* against the *U. S. Pottery Co.* the justice had jurisdiction of the defendant to render such judgment. The plaintiffs were allowed to introduce parol evidence tending to contradict the fact of the jurisdiction of the justice over the defendant, as shown by the record. This was error, as shown by all the authorities above

cited from our own reports. Many more might be added from other States, some of which are cited on the defendant's brief. What might be the rights of the company to introduce such testimony, in a proceeding brought against Harman directly to have that judgment vacated, it is not necessary to consider. This is not such a proceeding, and Harman is not a party hereto. The U. S. Pottery Company, if a party hereto, would have no right to introduce evidence to contradict the record by showing that the justice acquired no jurisdiction over it by the service on McEowen as a stockholder. Neither had the plaintiffs any such right. Hence the defendant was entitled to have the court comply with the request: " That the defendant has shown a clear and perfect title to the clay-bed, so called, as conveyed by said Elhanan to said Archer and others ; and is the owner of the same, as in said deed described " ; and also with the other request : " That the plaintiffs are bound by everything and every act which would bind the United States Pottery Company, and cannot complain of any act of the defendant of which the U. S. Pottery Company could not complain." This will reverse the case.

But there is another palpable error in the holding of the County Court. The record of the U. S. Pottery Company, together with its articles of association, and annual reports made, subscribed, sworn to, and recorded in the town clerk's office, as required by statute, showed Sidney B. McEowen to be a stockholder in said company. The plaintiffs were allowed, against the exception of the defendant, to introduce evidence tending to show that he was not in fact such a stockholder. The object and purpose of the statute requiring the recording of the articles of association, and annual reports, was to show to the public who were the stockholders, the amount of capital paid in, and the amount of the debts of such company, that the creditors of the company might know the credit and standing of the company, and who the stockholders were, to whom they might look personally for their debts in case of violation of the provisions of the statute, regarding contracting debts in excess of capital paid in, &c. Chapter 86, Gen. Sts. ss. 41 to 66 inclusive. All the provisions of the act under which the company organized show that the recording of

articles of association and annual reports was required with reference to the public, and especially the creditors of the company. To allow the company to hold out a person in such recorded articles of association and annual reports as a stockholder, and when brought into court by service of the writ on such stockholder, to show that he in fact was never such stockholder, and for that reason, service upon him according to the requirements of the statute, was no service upon the company, would violate the plainest principles of law and justice. Clearly by the recorded articles of association, and annual reports, showing McEowen a stockholder, the company was estopped from introducing evidence tending to show the contrary, when a creditor had acted on such recorded and sworn evidence, furnished by the company, of his being a siockholder, and predicated the service of his writ thereon against the company. Service of the writ, which bound the company, bound everybody collaterally affected by the same. Hence, all the evidence introduced to show that McEowen was not a *bona fide* stockholder in the company was inadmissible. It was enough, so far as concerned creditors seeking to make service of process on the company, that the company had made him *de facto* a stockholder. For such a purpose, whether he was *de jure* a stockholder was immaterial. These views are probably decisive of the case. It may however be proper to remark that under the declaration we do not think that the plaintiffs had the right to introduce evidence, that the digging of clay by the defendant caused them to go a greater distance to get to their wood-lot, and thereby increase their damages. Such would be special damages, which would require to be set out in the declaration to be recovered. But the verdict indicates that the defendant has suffered little, if at all, by such evidence, so that we should not have reversed the case for this error.

The judgment of the County Court is reversed, and cause remanded.